IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMMY D. BLACKBURN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-3140-CV-S-ODS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn A. Colvin as the Defendant in this suit.

relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1965, and attended high school through the eleventh grade. R. at 36-37, 155. Plaintiff's prior work history includes sewing panels into caskets, serving as an assistant manager, working on assembly lines, and driving a forklift. R. at 40-45. In 2013, Plaintiff applied for disability and disability insurance benefits, alleging a disability onset date of July 11, 2012. R. at 14, 155-57. Plaintiff's application was denied, and she requested a hearing. R. at 88-93, 97-98. A hearing was held before an administrative law judge ("ALJ") in August 2014. R. at 31-75. On December 23, 2014, the ALJ determined Plaintiff was not disabled. R. at 14-25. Plaintiff appealed the decision to the Appeals Council, which denied her appeal. R. at 1-3.

In reaching his decision, the ALJ found Plaintiff had the following severe impairments: L4-S1 degenerative disc disease status post L4-S1 fusion, C5-6 degenerative disc disease, bilateral ankle tendonitis, migraines, residuals of right ulnar nerve transportation, and residuals of bilateral carpal tunnel syndrome. R. at 16. The ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

> [P]erform light work as defined in 20 CFR 404.1567(b) except that she must have a sit/stand option at the worksite with the ability to change positions frequently, defined as not more often than every hour for one minute and then can return to the same position or a different position; she can climb stairs and ramps occasionally; she can never climb ladders or scaffolds, kneel, or crouch; she can stoop and crawl occasionally; pushing and pulling with arms and reaching in all directions is limited to frequent; pushing and pulling with legs is limited to occasional; handling/gross manipulation and fingering/fine manipulation is limited to frequent; she can never lift overhead; and she must avoid concentrated exposure to extreme cold, vibration, and noise above level 3.

R. at 18. Based upon the RFC and the Vocational Expert's ("VE") testimony, the ALJ concluded Plaintiff could perform past relevant work as cashier supervisor, and could also work as a cashier wrapper. R. at 23-24. Plaintiff now appeals the ALJ's decision to this Court.

2

## III. DISCUSSION

Plaintiff argues the ALJ's decision must be reversed because (1) the ALJ failed to accord adequate weight to Plaintiff's treating physician's opinion, (2) the ALJ erred in failing to consider Plaintiff's absenteeism, and (3) the ALJ erroneously discredited Plaintiff's subjective complaints.

### A. Treating Physician's Opinion

Plaintiff claims the ALJ erred in affording little weight to the opinion of Plaintiff's treating physician, Dr. Dennis Robinson. Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. *See Anderson*, 696 F.3d at 793-94; *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Anderson*, 696 F.3d at 793.

In August 2014, Dr. Robinson executed a form entitled "Residual Functional Capacity." R. at 591-93. He opined Plaintiff could frequently lift and carry ten pounds; stand and/or walk with usual breaks for three hours in an eight-hour workday; sit with usual breaks for three hours in an eight-hour workday; should never climb, balance, stoop, kneel, crouch, or crawl; has unlimited ability to see, speak, and hear; can occasionally reach, handle, finger, feel, push, or pull; cannot be around dangerous equipment or vibrations; will need to take unscheduled breaks between fifteen and twenty minutes in length every thirty to sixty minutes; and will need to miss work more than four days per month. *Id.* Plaintiff argues Dr. Robinson's opinion should have been afforded controlling weight.

The ALJ assigned little weight to Dr. Robinson's opinion because his opinion was based upon Plaintiff's reports of constantly being in pain and her hands hurting and going numb, Dr. Robinson's treatment notes were "devoid of an objective basis" for the limitations set forth by him, and his opinion was inconsistent with the other medical evidence in the record. R. at 22, 591-93. To support his decision to discount Dr. Robinson's opinion, the ALJ cited several of Dr. Robinson's treatment notes that

3

contradicted his opinion that Plaintiff had disabling limitations.  R. at 22, 395-412, 434-40, 507-08, 587-89.  These treatment notes indicate Plaintiff's upper and lower extremities exhibited normal range of motion, and do not establish disabling limitations.

The Court reviewed the record and finds substantial evidence supports the ALJ's decision to discount Dr. Robinson's opinion.  The Court also finds the ALJ provided good reasons explaining the weight he afforded Dr. Robinson's opinion.  Specifically, Dr. Robinson's opinion that Plaintiff suffered disabling limitations was inconsistent with and unsupported by Dr. Robinson's treatment notes.[2]  The ALJ properly afforded Dr. Robinson's opinion little weight, and the Court affirms the ALJ's decision in this respect.

### B. Absenteeism

Plaintiff contends the ALJ properly found she suffered from the severe impairment of migraines, but the ALJ failed to consider Plaintiff's absenteeism due to migraines when reaching his RFC determination.  From June 2013 through July 2014, Plaintiff completed a migraine log, tracking her migraines.  R. at 246-62.  During that time frame, Plaintiff typically experienced one migraine per month (June 2013, August 2013, September 2013, October 2013, November 2013, December 2013, April 2014, May 2014, June 2014, July 2014), and at most, she experienced two migraines per month (July 2013, January 2014, February 2014, March 2014).  *Id.*  Based upon this migraine log, Plaintiff argues she would be off work 1.5 times per month, and based upon the VE's testimony that an individual is typically allowed only eight absences per year, Plaintiff argues she would be unable to work.  Doc. #9, at 25.

With regard to Plaintiff's migraines, the ALJ noted Plaintiff "only occasionally complained of headaches to her medical providers," "she has been maintained on the same medication for her headaches without frequent changes in dosage both before and during the relevant period," and "she has not required frequent visits to the emergency room for her migraines."  R. at 21, 396; *see also* R. at 57-58, 465.  He also stated Plaintiff had not been referred to a headache care clinic, and she has not

---

[2] It should also be noted that Dr. Robinson's opinion that Plaintiff would miss more than four days of work per month due to migraines contradicts Plaintiff's argument to this Court that she would miss 1.5 days of work per month on average.  R. at 593; Doc. #9, at 25.

4

received aggressive treatment, such as Botox injections or occipital nerve blocks, for her migraines. R. at 21; *see also* R. at 57-58, 62. For these reasons, the ALJ concluded "[t]he evidence of record as a whole indicates that the claimant does not have greater limitations than those included in the residual functional capacity." *Id.*

Plaintiff cites *Baker v. Apfel*, 159 F.3d 1140 (8th Cir. 1998), in support of her argument this matter should be remanded because the ALJ failed to consider Plaintiff's absenteeism. In *Baker*, the plaintiff's treating physician opined Plaintiff would "miss a great deal of work. *Id.* at 1146. This physician's opinion was supported by "page after page of medical records detailing Baker's injections of Demerol, after which he must be driven home by someone else due to the effects of the drug." *Id.* The record also established the plaintiff received 60 Demerol injections over the course of six months, and the plaintiff would be absent at least twenty-six days during the year. *Id.* Because the ALJ failed to consider the plaintiff would be absent from the workplace to receive these injections, the Eighth Circuit reversed and remanded the case.

*Baker* is dissimilar to the record presented to this Court. There is no objective evidence that Plaintiff would "miss a great deal of work," or that her condition required aggressive treatment, such as injections. Instead, unlike *Baker*, the record establishes conservative treatment for migraines, and said treatment does not require a visit to a doctor's office or emergency room. Further, Plaintiff's representation that she would miss 1.5 days of work per month is not supported by objective medical evidence. Other than Plaintiff's treating physician's opinion that Plaintiff would miss more than four days of work per month, which is far more time off than suggested by Plaintiff, nothing in the record supports Plaintiff's assertion. For these reasons, the Court finds the ALJ's decision not to include absenteeism in the RFC is supported by substantial evidence in the record.

### C. Plaintiff's Credibility

Plaintiff also maintains the ALJ erred in evaluating her credibility. The familiar standard for analyzing a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* at 1322. The ALJ "need not explicitly discuss each *Polaski* factor...[t]he ALJ need only acknowledge and consider those factors before discounting a claimant's subjective complaints." *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citations omitted); *see also Samons v. Apfel*, 497 F.3d 813, 820 (8th Cir. 2007).

Plaintiff argues the Court should reverse the ALJ's decision because the ALJ said during the close of the hearing that he found Plaintiff's "testimony to be perfectly reliable," but then, in his decision, stated Plaintiff's "description of the symptoms and limitations are generally inconsistent and unpersuasive." R. at 19, 74. This Court is not inclined to parse the ALJ's use of the word "reliable" at the close of the hearing and compare it with the language utilized in his opinion, particularly in light of the fact that several pieces of medical evidence – specifically, ten exhibits – were not submitted in time for the ALJ to review prior to the hearing. R. at 34-35, 73-74. Instead, this Court's

review is limited to a determination of whether the ALJ's decision is "supported by substantial evidence on the record as a whole." *Andrews*, 791 F.3d at 928.

The ALJ properly analyzed Plaintiff's credibility. He found, and discussed at length, that the objective medical evidence did not support the severity of Plaintiff's alleged disabling symptoms and limitations. R. at 19-21. The ALJ considered the opinions of five physicians when evaluating Plaintiff's allegations of disabling impairments. R. at 21-23. The ALJ also properly considered Plaintiff's minimal treatment for her back and neck. R. at 20. And the ALJ appropriately noted Plaintiff's tibial tendonitis was completely resolved in 2012, and Plaintiff did not require additional treatment for carpal tunnel syndrome during the relevant timeframe. R. at 20-21. Although Plaintiff complained of foot pain, the ALJ found Plaintiff did not use orthotics as recommended by her medical providers, and instead, typically wore flip-flops, which did not provide support for her ankles. R. at 21. Finally, the ALJ correctly considered Plaintiff's conservative treatment for migraines. R. at 21.

The ALJ acknowledged and considered the *Polaski* factors. R. at 21-27. The ALJ is not required to discuss each factor in turn, but must merely consider the *Polaski* factors. *See Eichelberger*, 390 F.3d at 590. To the extent Plaintiff argues the medical evidence could support a decision contrary to the ALJ's, the Court will not substitute its judgment for that of the ALJ. *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (stating "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."). The Court finds the ALJ did not err in analyzing Plaintiff's credibility.

## IV. CONCLUSION

The Court concludes there is substantial evidence in the record as a whole to support the ALJ's decision. The Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 12, 2017          UNITED STATES DISTRICT COURT

7